## Howard, et al. v. Gowen, et al.

(Decided December 7, 1920.)

### Appeal from Adair Circuit Court.

Fraud—Fraudulent Conspiracy—Sufficiency of Evidence—Question for Jury.—In an action to recover damages for the breach of a contract to purchase tobacco, evidence that there was a fraudulent conspiracy between the plaintiffs and defendants' agent, through whom the purchase was made, to cheat and defraud defendants, held insufficient to take the case to the jury.

MONTGOMERY & MONTGOMERY, GORDON MONTGOMERY and BOYES, SEGGS & HENDERSON for appellants.

JONES & GARNETT and J. H. GRAHAM for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

C. Gowen and Ed. Gowen, composing the firm of Gowen & Son, brought suit against A. W. Howard, W.

G. Pickett and others to recover damages in the sum of $3,433.13 for breach of a contract by which defendants purchased from plaintiffs 30,575 pounds of tobacco at the price of 35c per pound for 28,300 pounds, and 36c per pound for 2,275 pounds. Defendants pleaded in substance that the tobacco was purchased by their agent, C. C. Rowe, and that there was a fraudulent conspiracy between Rowe and plaintiffs whereby Rowe was to share in the profits of the sale, or was to receive a commission from plaintiffs, and thus cheat and defraud defendants. The trial court held that the evidence on the question of conspiracy was not sufficient to take the case to the jury. By a peremptory instruction he told the jury to find for plaintiffs in a sum not exceeding the amount sued for. By another instruction he told the jury that the measure of damages was the difference, if any, between the contract price agreed on by plaintiffs and C. C. Rowe, agent of defendants, and the price the tobacco brought on the market at Greensburg at the time it was sold, not to exceed the sum of $3,433.13. By another instruction he withdrew from the jury all the testimony pertaining to the conversations between the defendants, or any of them, and C. C. Rowe, in the absence of plaintiffs, and also all evidence as to the quality of the tobacco when delivered at Greensburg. The jury returned a verdict in favor of plaintiffs for the full amount sued for, and the defendants appeal.

It appears from the evidence that defendants appointed Rowe as their agent to make purchases of tobacco. Rowe and C. Gowen are brothers-in-law. Rowe approached Gowen who, at that time, had on hand about 26,000 pounds, and after offers of 32, 33 and 34c a pound were refused, finally purchased the tobacco at 35c a pound. After that, some tobacco which the younger Gowen had was put in at the same price. C. Gowen also purchased a crop from Coomer at 31c which Rowe wanted to go in on the trade. Thereafter, the younger Gowen purchased a small quantity of tobacco from Everett Campbell, for which he gave 25c. This tobacco also went in on the trade. C. Gowen and Rowe also went to look at Frank Firkin's tobacco. Rowe wanted Firkin to deliver the tobacco at Greensburg. Firkin declined to do it, but agreed to sell it at $32.50 per hundred. Rowe asked C. Gowen if he would take and pay for the Firkin tobacco and deliver it to Greensburg for $2.50 a hundred. Gowen declined to do so but agreed to deliver the

tobacco at Greensburg for $3.50 per hundred. Firkin delivered the tobacco and Gowen paid for it. Gowen then took six loads of the tobacco to Greensburg, but the defendants declined to receive it. Thereupon, Gowen notified them that he would sell the tobacco on the open market, and sue them for the difference in price. Thereafter, he brought the tobacco to Greensburg and sold it on the open market for $7,290.77. According to defendants, Rowe was instructed to purchase first class tobacco, and the tobacco purchased from Gowen was of inferior quality. If the tobacco had been of the quality represented by Rowe, it would have been worth $40.00 or $50.00 on the market.

The circumstances relied on to show the fraudulent conspiracy were that C. Gowen and Rowe were brothers-in-law, the quality of the tobacco was not as good as represented by Rowe, and that Rowe permitted Gowen to go out and purchase tobacco at less than 35c a pound and put it in the sale at that price. It must be remembered, however, that Rowe told the defendants that Gowen had purchased his tobacco at from 15c to 25c per pound, and the purchases which he thereafter made and which were included in the trade were at a much higher price. Howard admits that when the slump in the price of tobacco came, it declined from $5.00 on the lower grades to $20.00 on the higher grades. The slump in the price of Gowen's tobacco was well within these limits, and the prices which it brought on the market were not disproportionate to the average sales on those days. Without entering into an extended discussion of the matter, we agree with the trial court that the circumstances relied on to show a fraudulent conspiracy were altogether consistent with fair dealing and were not, therefore, sufficient to take the case to the jury.

Judgment affirmed.